## Ex parte Matthew Simpson.

A copy of a receipt is not admissible, without proper notice to produce the original, or proof of its loss or destruction.

Upon an issue formed between an insolvent debtor and his creditors, of "fraud or not fraud," the Jury should find the affirmative or negative of the issue. A general verdict of " guilty" is improper and illegal.

The " Inferior Court" as established by the *Constitution* of Georgia, and distinguished from other inferior judicatories ordained and established by the *General Assembly*, has the power to grant new trials.

The *Constitutional* writ of Certiorari is applicable to the errors of inferior jurisdictions, contra-distinguished from the " *Inferior Court :*" the *Judicial* writ of Certiorari is alone applicable to the " *Inferior Court*" as before distinguished.

The necessity of exceptions and 20 days notice applies only to the *judicial* writ.

*It seems*, that where improper evidence has been received by the justices of the Inferior Court, on the trial of an insolvent debtor for fraud, or where the Jury have not found a verdict conformable to the issue, upon the refusal of said justices to grant a new trial, a *mandamus* to them will be awarded.

### By CHARLTON, Judge.

**THIS** is a petition for a *certiorari*, and it states :

" That the petitioner was, on the 19th of May, of the present year, confined in the common jail of this county, by virtue of process issued out of a Justice's Court, at the suit of one *Samuel Cripps*—that he applied for the benefit of the Insolvent Act—that an order was granted by a Justice of the Inferior Court, returnable on the 21st of June, conformably to that Act : that on the 28th of May, certain creditors therein named, by their attorneys, filed in the office of the Clerk of the Inferior Court, a suggestion of fraud, against the application of petitioner, embracing five grounds, upon which an issue was made up between petitioner and the objecting creditors : that three of these grounds were abandoned by counsel for creditors, and the two following only insisted upon, viz : 1*st.* that the said *Matthew*, on the 12th of May, fraudulently purchased goods from the said *Tufts* and *Reed*, (two of the ob-

jecting creditors,) on a credit, well knowing that he was about to be insolvent, or that he was about to declare himself insolvent: and that, 2d. the said *Matthew*, with a view to defraud his creditors, made a sale of all his goods and effects, immediately before he went to jail, which goods were generally those he had purchased from said *James Kenyon*, (another objecting creditor,) and *Tufts* and *Reed*." That on the 28th of June, the issue on this suggestion of fraud, came on to be tried, in the Inferior Court of Chatham county, before the Honorable *George L. Cope*, and *Thomas N. Morel*, two of the Justices of that Court, by a Jury sworn and impanneled for that purpose, on which trial the said Justices ruled, and permitted the following errors and irregularities, for, that they suffered the counsel for the creditors, to read and give in evidence a *copy* of a receipt from the petitioner, to one *Thomas Cowley*, for goods sold him, without having proved, or shewn that the original was lost or destroyed: that the copy of said receipt was read from the county record, although the counsel for petitioner strongly objected thereto: *that one Charles Roe* was introduced and sworn as a witness, on the trial of said issue, and did give evidence, which evidence was, that the petitioner did purchase, from *Tufts* and *Reed*, on the 12th of May, 1821, goods to the amount of $184 51, on a credit of twenty days, upon which testimony the counsel for the petitioner's creditors relied before the Jury, for the establishment and support of the said suggestion of fraud, and the Jury returned a verdict of *guilty*, with a recommendation of petitioner to mercy."

Upon these statements the petitioner proceeds to allege, that the proceedings and verdict of the Court below are contrary to law: 1st. "Because the Court permitted illegal evidence to go to the Jury: 2d. Because the verdict of the Jury is repugnant to the issue and contrary to law, and 3d. Because the Jury should have found fraud or no fraud." The petitioner *relying* upon these statements, allegations and reasons, prays for the writ of

*certiorari.* Subsequent to this application, however, for the writ of *certiorari,* to remove this cause before the Superior Court, an attempt was made, and on my suggestion, to obtain from the Inferior Court a *new trial,* upon the errors assigned in the petition, but more particularly upon the grounds, " That the verdict of the Jury, did not find the issue, according to law, but was repugnant thereto : that the said verdict of the Jury is " guilty," and has received the same force and effect, as though it alleged a fraud against the said *Matthew Simpson :* that the confinement of petitioner, under the verdict, is contrary to an Act to carry into effect the 7th Sect. of the 4th Article of the Constitution." The justices before whom the issue was tried, received this petition or motion for a new trial, and passed upon it the following order : " Upon reading the foregoing petition, we are of opinion, that a new trial ought not to be granted, and the same is hereby refused." (Signed)

THOMAS N. MOREL, J. I. C. C. C.

GEO. L. COPE, J. I. C. C. C.

It is obvious that the errors and irregularities stated in the petition to this Court, for a *certiorari,* and in the subsequent motion and application to the justices for a new trial, afford sufficient bases for granting it. The inadmissibility of the copy of the receipt, without notice to produce the original, or proof of its loss or destruction, or other equivalent secondary evidence, connected with the finding of the Jury, which is irreconcilable with the issue, (and operating as it does so penally, it ought to have followed the terms of the statute,)—these, I say, independent of other grounds, were of themselves sufficient *in favorem libertatis* for a re-investigation. This Court cannot believe, that the Honorable justices refused a new trial for the insufficiency of the reasons assigned, but must have done so under an impression, I find pretty generally imbibed, that the Inferior Court has no power to grant a new trial. I am referred to no opinion of this Court, on

PART I.—P.

record, denying this among the other concurring powers of the Inferior Court, and I know not how such opinion could derive authority from our Constitution and laws, or by analogy even to British jurisprudence.   The 3d Art. as amended of the Constitution, Sect. 1st. divides the judicial powers of the State among Superior Courts, and such inferior jurisdictions as the Legislature shall from time to time ordain and establish—except cases " respecting titles to land," the " Inferior Courts shall have cognizance of all other civil cases."   Throughout this Article, " *Inferior Courts*" are contradistinguished from inferior jurisdictions, or judicatories—the former derive their birth and powers, as to " all the civil cases," from the Constitution, the latter are to trace their parentage to an ulterior subordinate establishment by the Legislature.   If the *Inferior Court* then, has a constitutional cognizance of, and concurrent jurisdiction with the Superior Court, of " all other civil cases," it results, that it possesses all the incidents and powers of the Superior Court, in the investigation and determination of causes, of which, it can take cognizance.   In this respect, it is analogous to the Court of Common Pleas of England, in its relations to the King's bench.   There is no greater limitation, upon its authority, in the trial of causes, which may be constitutionally brought before it, than we find imposed on the Court of Common Pleas.   It consequently possesses as ample jurisdiction and discretion, in refusing, or granting, a new trial.   It is this power supposed to be vested anew by the declaration of English authorities, and particularly the elder, that a new trial cannot be granted by an Inferior Court.   (*Salk.* 650.   *Str.* 113.   *Sayer.* 203.   *Salk.* 201.)   A reference to the division of the English Courts, and the subordination of one Court to another, according to *Hale's An.* and adopted by *Bacon*, will clearly shew, that the *Inferior Court*, to which the inhibition to grant a new trial is directed, cannot apply to our *constitutional* " Inferior Court." The division of the English Courts is, into such as are of record, and not of record ; and those of record, into such as are supreme,

superior or inferior. The Supreme Court of the Kingdom is the high Court of Parliament—Superior Courts of record are, 1*st.* Those that are *more* principal, and *less* principal. 1*st.* The more principal ones. 1. The Lord's House in Parliament. 2. The Chancery. 3. King's Bench. 4. Common Pleas. 5. Exchequer, &c. The less principal are Goal delivery, Oyer and Terminer, Assize, Nisi Prius, &c. The Inferior Courts of record, " as ordinarily so called, are Corporation Courts, Courts Leet, and Sheriff's Tourn, &c." Courts not of record, are the Courts Baron, County Courts, and Hundred Courts, &c. Now, our Inferior Courts, invested as they are, as Courts of record, with the high and important powers and attributes delegated by the Constitution and laws, are, as distinguished from other inferior judicatories, and according to the English division and classification, Courts " more principal," because they have an amplitude of jurisdiction analogous to the English Court of Common Pleas, which is a Court " more principal," as designated in the English division. It follows, and to my mind as an irresistible conclusion, that our Inferior Courts possess the power of granting new trials. It is a doctrine, which to me, seems to teem with absurdity, that a Court possessing, as the Inferior Court does, concurrent power with the highest tribunal of the State, in the trial of civil cases, to any amount, and any importance as it may relate to principle, is notwithstanding fettered in its authority and discretion to award substantial justice, upon the manifest errors of law and fact, of the first verdict. The inhibition of the English authorities has no applicability. It will be found to extend to very Inferior Courts of record, or not of record. As illustrative of this proposition, I shall advert to two or three cases generally relied upon, in support of the doctrine. The first is the case of *Dem. Regina* vs. *Hill, et. al.* (*Salk.* 201.) " Judgment was given in the Town Court of Bristol, and costs taxed and a *sci. fa.* taken out against the bail, and a year afterwards the Court granted a new trial, and set aside the first judgment, and an attachment was

granted against the Judge for this cause." (*Perk.* 550. *S. C.* 2 *Salk.* 650. *S. C.* 3 *Salk.* 363. *Holt.* 421.) " *Yorke* moved for a *Mandamus* to the Judge of the Court of Sandwich, to give judgment upon a verdict, though he had granted a new trial for excessive damages, without payment of costs. And he insisted that a Judge of an Inferior Court cannot grant a new trial : and to that opinion the Court inclined." *Brooke* vs. *Ewer* and *ux.* (1 *Str.* 113.) It will then be perceived that the Inferior Courts, to which the English authorities deny the power of granting a new trial, are similar in their functions and organization to our subordinate Inferior Courts of record, and not of record—such as Corporation Courts, Justice's Courts, Courts Martial, and other inferior judicatories ordained and established by the General Assembly. Having endeavored to remove, and I hope satisfactorily, the doubt, if it existed, on the minds of the justices, another application to that Court may, perhaps, be attended with better success. Within any reasonable time after the verdict of the Jury, (particularly as an extra session of the Court is held, and the Jury impanneled for the special purpose of trying the issue of fraud,) the motion for a new trial may be made, and upon its being granted, it is perfectly competent for that Court to assign a convenient time, and direct another Jury, to be drawn for the second trial. This effort is due to an unhappy fellow creature, who is doomed to perpetual imprisonment, if another investigation should confirm the verdict under which he is now confined. This being the destiny which awaits him, the humanity of the Court will surely avail itself of any legal grounds which may possibly in its developements entitle the prisoner to the benefit of the insolvent act. I am satisfied a new trial ought to be granted, and if it is refused under all the circumstances suggested, it will become my duty to find some remedy for a case, which without the interposition of this Court is deprived of one. That remedy, will, under my present impressions, be the writ of *Mandamus*, directing a new trial upon the grounds stated in the petition and motion of the prisoner. I hope, however, that

a re-consideration of the justices will prevent any further application to this Court. The *rule nisi* for the *certiorari* must be discharged, and upon some of the objections urged by the counsel for the creditors. I still maintain the distinction between the *constitutional* and *judicial* writ of *certiorari.* The former is only applicable to the errors of inferior jurisdictions, *other* than " *Inferior Courts ;*" the latter is the legislative remedy for the correction of errors of *Inferior Courts,* as before contradistinguished from Inferior Judicatories. A petition stating *in extenso* the errors of the Inferior Judicatory, and verified by the applicant, will upon such terms, as the circumstances of the case may require, such as payment of costs and giving security, obtain a *rule nisi,* upon not iceto the opposite party, or, if the exigency of the case should demand a more energetic and speedy proceeding, an immediate granting of the *certiorari.* The principles and the exigencies which influence a Court of chancery in granting injunctions, will be good guides for this Court on applications for the constitutional writ of certiorari, the objects of both remedies, being very similar. The *judicial* writ of certiorari is exclusively for the correction of errors of the *Inferior Court,*—that Court next in dignity to the Superior Court. In the exercise of this power by the Superior Court, the party applying for the certiorari must shew that he has complied with the preliminary measures of taking exceptions, having them over-ruled, and giving twenty days notice. It is also required by Act of General Assembly passed 16th December, 1811, payment of costs which may have accrued on the trial below, and sufficient security for the eventual condemnation money, *or* any future costs which may accrue. These latter requisites are in common with every species of certiorari, constitutional or judicial, but the necessity of exceptions and twenty days notice are only requisite on applications for certioraris to the Inferior Courts, and no other Courts can be implied in the Judicial act of February 16th, 1799, Sect. 54, because the Judge of the Superior Court is commanded upon deeming the ex-

ceptions sufficient, forthwith to issue a certiorari directed to the *Clerk* of such Inferior Court. This certiorari cannot therefore issue to an inferior jurisdiction not having a Clerk. Hence the correctness of the exposition, establishing the distinction as contended for, between the constitutional and judicial writ of certiorari. I hope this subject is now at rest and that I have rendered myself sufficiently intelligible to silence further explanations in the distinction. In this case no exceptions having been taken, or notice given, and other requisites complied with in terms of the acts of 1799, and 1811, I am compelled to discharge this rule, and it is accordingly discharged.

Rule for certiorari discharged.